UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| CHRISTINA H. GREEN | CIVIL ACTION |
| VERSUS | NO. 20-1430 |
| MERCURY INSURANCE COMPANY, ET AL. | SECTION "R" (2) |

## ORDER AND REASONS

Before the Court is plaintiff Christina Green's motion to reconsider[1] an order[2] denying her request for an extension of her expert report deadline, and defendant James River Insurance Company's three motions *in limine* to exclude Dr. Lacy Sapp's testimony,[3] exclude the "life care plan" produced by Dr. Sapp,[4] and partially exclude the testimony of Dr. Eric Lonseth.[5] For the following reasons, the Court denies plaintiff's motion to reconsider, and grants defendant's motions *in limine*.

---

[1]    R. Doc. 44.
[2]    R. Doc. 42.
[3]    R. Doc. 19.
[4]    R. Doc. 38.
[5]    R. Doc. 18.

I.   BACKGROUND

This case arises from a car accident.  According to Green's complaint, on September 4, 2019, plaintiff was operating her vehicle as a rideshare for Rasier, LLC ("Uber"), when defendant Natalie Petty negligently caused an accident by crashing into the passenger side of plaintiff's vehicle.[6]  Plaintiff alleges that she suffered injuries to her upper and lower extremities, and severe pain in her cervical, thoracic, and lumbar spine.[7]

James River removed to this Court on May 13, 2020.[8]  James River allegedly provides uninsured/underinsured motorist and medical benefits through Uber.[9]  Plaintiff seeks to hold James River liable to the extent that Petty's liability insurance is inadequate to cover her damages.[10]

On June 18, 2020, the Court issued a scheduling order setting a trial in this matter for March 22, 2021.[11]  Under the scheduling order, plaintiff's expert disclosures were due by December 11, 2020.[12]  Plaintiff disclosed that she expected to call on three witnesses at trial: (1) Dr. Samer Shamieh, one

---

[6]   R. Doc. 1-1 at 1-2, ¶¶ 2-4, 7.
[7]   *Id.* at 2, ¶ 5.
[8]   R. Doc. 1.  On plaintiff's motion, the state court dismissed Petty and her liability insurer, Mercury Insurance Company.  R. Doc. 1-2 at 1.  James River is the only remaining defendant in this action.  R. Doc. 1.
[9]   R. Doc. 1-1 at 2, ¶ 7.
[10]  *Id.*
[11]  R. Doc. 9 at 4.
[12]  *Id.* at 2.

of plaintiff's treating physicians who performed a "Bilateral Endoscopic Rhizotomy;" (2) Dr. Eric Lonseth, another treating physician who performed three "Lumbar Epidural Steroid Injections" ("ESIs"), and a "Lumbar Medical [sic] Branch Block;" and (3) Dr. Lacy Sapp, a "Life Care Planner."[13]

In three motions, defendant moves (1) to exclude Dr. Sapp's testimony, contending that plaintiff did not timely produce an expert report as required under Federal Rule of Civil Procedure 26(a)(2)(B);[14] (2) to exclude Dr. Sapp's report, a "life care plan" which plaintiff untimely produced on February 9, 2021;[15] and (3) to partially exclude the testimony of Dr. Lonseth—specific statements made at his deposition—contending that the relevant portions of his testimony are speculative and unreliable.[16] Additionally, plaintiff moves for reconsideration of the Court's order denying her request for an extension to the expert report deadline.[17] The Court considers the parties' motions below.

---

13    R. Doc. 18-2 at 1-2.
14    R. Doc. 19.
15    R. Doc. 38.
16    R. Doc. 18.
17    R. Doc. 44.

3

## II. DISCUSSION

### A. Plaintiff's Motion to Reconsider

The day after defendant moved *in limine* to exclude Dr. Sapp's testimony based on plaintiff's failure to include a written report as required by Rule 26(a)(2)(B),[18] plaintiff moved for an extension to the expert report deadline.[19] The Court denied that motion, finding that plaintiff had not shown good cause for the requested modification to the scheduling order.[20] Now, plaintiff moves under Federal Rule of Civil Procedure 54(b) for reconsideration of the Court's order denying an extension to the expert report deadline.[21]

Rule 54(b) provides that an order that adjudicates fewer than all the claims among all the parties "may be revised at any time" before the entry of a final judgment. As Rule 54 recognizes, a district court "possesses the inherent procedural power to reconsider, rescind, or modify an interlocutory order for cause seen by it to be sufficient." *Melancon v. Texaco, Inc.*, 659 F.2d 551, 553 (5th Cir. 1981). Under Rule 54(b), "the trial court is free to reconsider and reverse its decision for any reason it deems sufficient, even in

---

18   R. Doc. 19.
19   R. Doc. 21.
20   R. Doc. 42.
21   R. Doc. 44.

4

the absence of new evidence or an intervening change in or clarification of the substantive law." *Austin v. Kroger Tex., L.P.*, 864 F.3d 326, 336 (5th Cir. 2017).

Plaintiff asserts that reconsideration is appropriate for the same reasons stated in her original motion for an extension to the expert report deadline.[22] Specifically, plaintiff argues that Dr. Sapp could not produce a report by the December 11 deadline because she needed to first consult with plaintiff's treating physician, Dr. Shamieh.[23] Plaintiff contends that this consultation could not occur until January 2021, three months after Dr. Shamieh performed a medical procedure.[24]

But Dr. Shamieh's deposition was held on September 30, 2020.[25] Thus, although plaintiff knew by September that Dr. Sapp could not produce her report by the deadline, plaintiff waited to move[26] for an extension until January 27, 2021—after defendant had moved to exclude Dr. Sapp's testimony.[27] For the same reasons stated in the Court's previous order,[28] the

---

[22]  *See* R. Doc. 44-1 at 3-4; R. Doc. 21 at 4-5.
[23]  R. Doc. 44-1 at 4.
[24]  *Id.*; *see also* R. Doc. 18-4 at 35-38 (Dr. Shamieh Deposition at 34:19-35:8).
[25]  R. Doc. 18-4 at 1 (Dr. Shamieh Deposition).
[26]  R. Doc. 21.
[27]  R. Doc. 19.
[28]  R. Doc. 42.

5

Court finds that plaintiff has failed to show good cause for her failure to timely move for an extension.

Additionally, in the motion to reconsider, plaintiff's counsel, Jatavian Williams, states that his failure to timely move for an extension was "inadvertent[,]" and that the pandemic created uncertainty about whether courts would extend trial dates and deadlines.[29] To be sure, the COVID-19 pandemic has created uncertainty surrounding when courts in the Eastern District of Louisiana will hold jury trials. But there has never been any doubt that deadlines other than the trial date remain in effect. The Chief Judge of the Eastern District of Louisiana has promulgated several general orders suspending jury trials in light of the pandemic, but each general order states that "[t]hose continuances *do not continue any pending deadlines other than the trial dates.*" *E.g.*, Eastern District of Louisiana, General Order 20-2 at 1 (emphasis added). The general orders instruct that "[a]ttorneys should contact the presiding judges in their continued cases if they seek to modify such other deadlines." *Id.* Nevertheless, plaintiff did not timely contact the Court, and has not established good cause for her failure to do so. Additionally, trial in this matter, originally scheduled for March 22, 2021, was not continued by general order until January 14, 2021—over a month

---

[29] R. Doc. 44-1 at 5-7.

after plaintiff's expert report deadline expired. *See* Eastern District of Louisiana, General Order 21-1.

For these reasons, and for the reasons stated in the Court's order denying plaintiff's request for an extension, the Court finds that plaintiff has not shown good cause for an extension to the expert report deadline. The Court denies plaintiff's motion to reconsider.

**B. Dr. Lacy Sapp**

In her expert disclosures, plaintiff states that she expects to call Dr. Sapp, a retained expert, to "quantify [plaintiff's future medical care needs] within a Life Care Plan."[30] Defendant moves to exclude Dr. Sapp's testimony, contending that plaintiff failed to timely produce a report as required by Federal Rule of Civil Procedure 26(a)(2)(B).[31] Defendant also moves to exclude Dr. Sapp's report, which plaintiff untimely produced on February 9, 2021.[32]

*1. Disclosure Requirements*

The Federal Rules of Civil Procedure impose disclosure requirements on a party who intends to provide expert testimony. *See* Fed. R. Civ. P. 26. Experts retained by a party must provide an expert report pursuant to Rule

---

30    R. Doc. 19-2 at 2, ¶ 3.
31    R. Doc. 19-1 at 1.
32    R. Doc. 38.

26(a)(2)(B). Expert reports for retained experts must include: (i) a complete statement of all opinions the witness will express and the basis and reasons for them; (ii) the facts or data considered by the witness in forming them; (iii) any exhibits that will be used to summarize or support them; (iv) the witness's qualifications, including a list of all publications authored in the previous 10 years; (v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and (vi) a statement of the compensation to be paid for the study and testimony in the case. Fed. R. Civ. P. 26(a)(2)(B).

The "presumptive sanction for failing to disclose a testifying expert or supply a required expert report . . . is to exclude or limit the expert's testimony unless the failure was substantially justified or harmless." *Honey-Love v. United States*, 664 F. App'x 358, 362 (5th Cir. 2016) (citing Fed. R. Civ. P. 37(c)(1)). The Fifth Circuit has described four factors for courts to evaluate whether to exclude testimony and expert reports that were not properly disclosed: "(1) the importance of the excluded testimony, (2) the explanation of the party for its failure to comply with the court's order, (3) the potential prejudice that would arise from allowing the testimony, and (4) the availability of a continuance to cure such prejudice." *Harmon v. Georgia Gulf Lake Charles L.L.C.*, 476 F. App'x 31, 36 (5th Cir. 2012) (citing

8

*EEOC v. Gen. Dynamics Corp.*, 999 F.2d 113, 115 (5th Cir. 1993)). The Court considers these factors below.

### 2. *Plaintiff's Failure to Disclose Dr. Sapp's Report*

First, in her expert disclosures, plaintiff states that she will introduce Dr. Sapp's testimony to quantify the value of plaintiff's future medical needs.[33] But plaintiff also discloses that she will rely on her treating physician, Dr. Shamieh, for testimony on "the need for future treatment."[34] Because plaintiff has listed a treating physician to testify to plaintiff's future medical needs, the Court finds that plaintiff has not shown that Dr. Sapp's testimony is so important as to outweigh the factors going in favor of excluding Dr. Sapp's testimony.

Second, plaintiff's explanation is the same as she asserted in her motions for an extension to pretrial deadlines and for reconsideration—that Dr. Sapp could not produce a report until after consulting with Dr. Shamieh.[35] But, as plaintiff admits, she knew by September 30, 2020, from Dr. Shamieh's deposition, that the consultation would not take place until January 2021.[36] Plaintiff provides no explanation for why she failed to move

---

[33]  R. Doc. 19-2 at 2, ¶ 3.
[34]  *Id.* at 1, ¶ 1.
[35]  R. Doc. 26 at 4.
[36]  *Id.*

9

for an extension until after defendant's motion *in limine* to exclude Dr. Sapp's testimony. The Court finds that plaintiff's explanation for failing to adhere to the deadline is inadequate, and that this factor weighs in favor of excluding Dr. Sapp's testimony.

Third, if the Court granted the extension, defendant would suffer prejudice in the form of additional litigation costs, discovery expenses, and expert witness fees. In particular, if the Court were to grant the extension plaintiff requests, defendant would need to undertake additional depositions and expert discovery. The Court finds that this factor weighs in favor of excluding Dr. Sapp's testimony.

Finally, although the trial has already been continued by General Order 21-1, the continuance does not cure the prejudice discussed above. Accordingly, the Court finds that this factor also weighs in favor of excluding Dr. Sapp's testimony. Having found that the balance of the relevant considerations weighs in favor of excluding Dr. Sapp's testimony and life care plan, the Court grants defendant's motions *in limine*.

### B. Dr. Eric Lonseth

Defendant also moves in *limine* to partially exclude the testimony of Dr. Lonseth, one of plaintiff's treating physicians.[37] In particular, defendant

---

37     R. Doc. 18.

10

moves the Court to limit Dr. Lonseth from testifying at trial that plaintiff will need repeated "radio frequency ablations" ("RFAs") every nine months for five to seven years.[38] At his deposition, Dr. Lonseth stated that a need for such repeated procedures was a "possibility."[39] Defendant argues that these statements are unreliable, and accordingly moves to exclude them.

> 1. *Admissibility of Expert Testimony*

The district court has considerable discretion to admit or exclude expert testimony under Federal Rule of Evidence 702. *See Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 138-39 (1997); *Seatrax, Inc. v. Sonbeck Int'l, Inc.*, 200 F.3d 358, 371 (5th Cir. 2000). Rule 702, which governs the admissibility of expert witness testimony, provides that an expert witness "qualified . . . by knowledge, skill, experience, training, or education may testify" if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

---

[38] R. Doc. 18-1 at 1.
[39] R. Doc. 18-3 at 35-36 (Dr. Lonseth Deposition at 35:24-36:23).

11

Fed. R. Evid. 702.

In *Daubert*, the Supreme Court held that Rule 702 "requires the district court to act as a gatekeeper to ensure that 'any and all scientific testimony or evidence admitted is not only relevant, but reliable.'" *Metrejean v. REC Marine Logistics, LLC.*, No. 08-5049, 2009 WL 3062622, at *1 (E.D. La. Sept. 21, 2009) (quoting *Daubert*, 509 U.S. at 589). This gatekeeping function applies to all forms of expert testimony. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999).

The Court's gatekeeping function consists of a two-part inquiry into reliability and relevance. First, the Court must determine whether the proffered expert testimony is reliable. The party offering the testimony bears the burden of establishing its reliability by a preponderance of the evidence. *See Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998). The reliability inquiry requires the Court to assess whether the expert's reasoning and methodology underlying the testimony are valid. *See Daubert*, 509 U.S. at 593. The aim is to exclude expert testimony based merely on subjective belief or unsupported speculation. *See id.* at 590. Second, the Court must determine whether the expert's reasoning or methodology "fits" the facts of the case and whether it will thereby assist the trier of fact to understand the evidence; in other words, whether it is relevant. *See id.* at 591.

"[F]undamentally unsupported" opinions "offer[] no expert assistance to the [trier of fact]" and should be excluded. *Guile v. United States*, 422 F.3d 221, 227 (5th Cir. 2005).

The Court's role as a gatekeeper does not replace the traditional adversary system. As the Supreme Court noted in *Daubert*, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596 (citing *Rock v. Arkansas*, 483 U.S. 44, 61 (1987)). "As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight," rather than the admissibility, of that opinion. *United States v. Hodge*, 933 F.3d 468, 478 (5th Cir. 2019) (quoting *United States v. 14.38 Acres of Land, More or Less Sit. In Leflore Cty., Miss.*, 80 F.3d 1074, 1077 (5th Cir. 1996)).

    2. *Dr. Lonseth's Testimony*

At his deposition, Dr. Lonseth, an interventional pain management doctor,[40] testified that he performed four procedures on plaintiff: three lumbar epidural steroid injections ("ESIs"),[41] and one lumbar medial branch

---

[40]     R. Doc. 18-2 at 38-40 (Dr. Lonseth CV).
[41]     R. Doc. 18-3 at 17, 20, 23 (Dr. Lonseth Deposition at 17:2-8, 20:6-18, 23:4-6)).

13

block.[42] During his deposition, held on September 3, 2020, Dr. Lonseth testified about those procedures, and about plaintiff's future treatment plan. Dr. Lonseth stated that plaintiff was unlikely to enjoy total pain relief from the procedures performed to that date, and that she would need a "rhizotomy" or RFA.[43]

Dr. Lonseth stated that plaintiff would "definitely need" an initial RFA or rhizotomy, and "more likely than not" she would need a second treatment nine months after the first.[44] Further, he noted that it was a "possibility" that he would continue recommending these treatments into the future, and that many of his patients undergo repeated procedures every nine months for five to seven years.[45] But he expressly declined to testify that it would be "more probable than not" that plaintiff would need such ongoing treatment.[46]

Defendant seeks to exclude the statements regarding the potential need for RFAs or rhizotomies over a five- to seven-year period, arguing that Dr. Lonseth's testimony regarding plaintiff's future medical needs is unreliable, as it is based on unsupported speculation. Numerous district

---

[42] *Id.* at 44 (Dr. Lonseth Deposition at 44:5-8).
[43] At the deposition, Dr. Lonseth used the term "rhizotomy" interchangeably with "RFA." *Id.* at 35-36 (Dr. Lonseth Deposition at 35:9-36:23).
[44] *Id.* (Dr. Lonseth Deposition at 35:24-36:23).
[45] *Id.*
[46] *Id.* at 37-38 (Dr. Lonseth Deposition at 37:21-38:3).

courts in the Fifth Circuit have excluded testimony relating to future medical needs when "the evidence establishes [that] it is only treatment the plaintiff *might* need, rather than treatment the plaintiff will *probably* need." *Brandner v. State Farm Mut. Auto. Ins. Co.*, No. CV 18-982, 2019 WL 636423, at *3 (E.D. La. Feb. 14, 2019); *see also Raborn v. Con-Way Truckload, Inc.*, No. CV 15-2969, 2016 WL 11687944, at *3 (E.D. La. Dec. 1, 2016); *Anders v. Hercules Offshore Servs.*, LLC, 311 F.R.D. 161, 165 (E.D. La. 2015).

Dr. Lonseth's testimony regarding the need for RFAs over a period of five to seven years is, by its own terms, speculative. Dr. Lonseth stated that it was merely a "possibility" that she would need such treatment, and was unwilling to say whether it would be "more likely than not."[47] Because the testimony is speculative, the Court finds that Dr. Lonseth's testimony as to the need for RFAs or rhizotomies over a five- to seven-year period is unreliable. *See Booker v. Moore*, No. 08-309, 2010 WL 2426013, at *5 (S.D. Miss. June 10, 2010) (finding that expert testimony as to surgery a plaintiff "might need" was "too speculative and not reliable" because the expert could not "opine to a reasonable degree of medical certainty whether the plaintiff will need surgery in the future"). Accordingly, the Court grants defendant's

---

[47] *Id.* at 35-38 (Dr. Lonseth Deposition at 35:24-36:23; 37:21-38:3).

motion *in limine*. The Court limits Dr. Lonseth from testifying that plaintiff may need RFAs or rhizotomies every nine months for five to seven years.

## II. CONCLUSION

For the foregoing reasons, the Court DENIES plaintiff's motion for reconsideration. The Court GRANTS defendant's motions *in limine* to exclude the testimony of Dr. Sapp and her life care plan. The Court also GRANTS defendant's motion *in limine* to partially exclude Dr. Lonseth's testimony.

New Orleans, Louisiana, this __27th__ day of April, 2021.

_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE